# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSÉ MONTALBAN, | : | No. 1:17cv212 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| MR. POWEL, et al., | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

### I.      Introduction

On January 27, 2017, José Montalban ("Montalban" or "Plaintiff"), a federal inmate formerly incarcerated at the Canaan United States Penitentiary ("USP Canaan"), in Waymart, Pennsylvania, filed this instant Bivens-styled complaint (Doc. 1) against nineteen Bureau of Prison ("BOP") staff members employed at USP Canaan.[1]  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  Montalban filed an Amended Complaint (Doc. 24) on April 14, 2017.  In his Amended Complaint Montalban claims that on December 28, 2012, Defendants subjected him to excessive force and were deliberately indifferent to his serious

---

[1] Montalban was transferred from USP Canaan to USP Coleman I in Coleman, Florida on July 17, 2014, where he remains incarcerated.  (Doc. 1, ECF p. 47; see also https://www.bop.gov/inmateloc) (last visited January 7, 2019).

medical needs. Montalban also asserts that in July 2014, CO Shultz lost or destroyed his legal materials. Named as Defendants are the following individuals: Mr. Powell ("Powell"); Mr. Verbyla Williams ("Williams"); Mr. Jason Glossenger ("Glossenger"); Ms. Patricial Burgerholff ("Burgerholff"); Mr. Moddroff ("Moddroff"); Mr. Walter Dobushak ("Dobushak"); Mr. M. Kabonick ("Kabonick"); Mr. Jarrett Tuttle ("Tuttle"); Anthony Pedone ("Pedone"); Mr. Mark Brennan ("Brennan"); Corey Vrabel ("Vrabel"); Corrections Officer (CO) Guillard ("Guillard"); CO Snee ("Snee"); CO Shultz ("Shultz"); Mrs. United States of America ("USA"); CO Macca ("Macca"); Dustin M. Cook ("Cook"); Caroline M. Johanson ("Johanson") and SIA John Gintz ("Gintz").

Presently ripe for disposition is the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).[2] (Doc. 44). For the reasons that follow, Defendants are entitled to summary judgment.

## II.     Standards of Review

### A.     Bivens Standard

Plaintiff's constitutional claims against the Defendants are filed pursuant to 28 U.S.C. § 1331, in accordance with Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Under Bivens, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought

---

[2] Defense counsel represents all named Defendants, except for Guillard. The Court notes that Guillard was not served with the Amended Complaint. Defense counsel advises Guillard is deceased. See ECF 45, n. 2.

to redress alleged federal constitutional or statutory violations by a federal actor.  Id.
Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected
interest could invoke the general federal question jurisdiction of the district court to obtain
an award of monetary damages against the responsible federal official."  Butz v. Economou,
438 U.S. 478, 504, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978).   The Third Circuit Court
of Appeals has recognized that "Bivens actions are simply the federal counterpart to [42
U.S.C.] § 1983 claims brought against state officials" and thus the analysis established
under one type of claim is applicable under the other.  Egervary v. Young, 366 F.3d 238,
246 (3d Cir. 2004) (citing Brown v. Phillip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001)).
In order to state an actionable Bivens claim, a plaintiff must allege that a person has
deprived him of a federal right, and that the person who caused the deprivation acted under
color of federal law.  Id.

### B.    Motion to Dismiss Standard

Rule 12(b)(1) allows for dismissal where the court lacks subject matter jurisdiction
over an action.  Motions brought under Rule 12(b)(1) may raise either a facial or factual
challenge to the court's jurisdiction.  "In reviewing a facial attack, the court must only
consider the allegations of the complaint and documents referenced therein and attached
thereto, in the light most favorable to the plaintiff."  Gould Elecs. Inc. v. United States, 220
F.3d 169, 176 (3d Cir. 2000).  Conversely, factual attacks allow the court to delve beyond
the pleadings to determine if the evidence supports the court's subject matter jurisdiction.
Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1997).  The party

asserting subject matter jurisdiction bears "the burden of proof that jurisdiction does in fact exist." Id.

### C.    Motion for Summary Judgment Standard

When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. Id.; In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 – 88 (3d Cir. 1999). However, in Hilfirty v. Shipman, 91 F.3d 573 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit held that a plaintiff has adequate notice of the court's conversion of motion to dismiss into motions for summary judgment if the defendants' motions to dismiss are framed in the alternative as motions for summary judgment. Id. at 578 - 79.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." MacFarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) (internal citations omitted). Material facts are those that "might affect the outcome of the suit under the governing substantive law." Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006). Where contradictory facts exist, the court may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 - 51, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (internal quotation marks and citations omitted); Paradisis v. Englewood Hosp. Med. Ctr., 680 F. App'x 131, 135 (3d Cir. 2017). In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences "in the light most favorable to the party opposing the motion." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014) (internal quotation marks omitted).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Santini v. Fuentes, 795 F.3d 410 (3d Cir. 2015) (citing Celotex, 477 U.S. at 323, 106 S.Ct. 2553). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) – (B).  To withstand summary judgment, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (citation omitted); see also Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000).  The non-moving party "may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. V. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016).  He cannot satisfy the burden with an affidavit or declaration that sets forth "opinions or conclusions" rather than "specific facts." Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (internal quotation marks omitted).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249, 106 S.Ct. at 2511.  Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.    Allegations of the Amended Complaint

Montalban alleges that on December 28, 2012, Food Service Supervisors Brennan and Wisniewski pulled his "mancard" by ridiculing and taunting him in the presence of other inmates.  (Doc. 24, ECF 12).  Fed up with Wisniewski's verbal abuse, Montalban "proceeded to physically assault Mr. Wisniewski" in the Food Supervisor's office.  (Id., ECF 13).  Brennan entered the office, sounded his body alarm, and picked up a glass coffee urn and attempted to smash it over Montalban's head.  When Plaintiff ducked the blow, the urn smashed against the wall spraying glass in all directions lacerating Wisniewski's

face. As Brennan managed to pull Montalban away from Wisniewski, other officers arrived. Plaintiff was subdued, handcuffed and shackled. As Montalban lay on the floor, Defendants Brennan, Wisniewski, Pedone, Powell, Verbyla, Moddruff, Vrabel, Glossenger, Guillard and Snee assaulted him. (Id., ECF 14). Unidentified officers assaulted Plaintiff again when transporting him to the infirmary, in the infirmary, and again when moving him to the Special Housing Unit ("SHU"). (Id., ECF 14 – 17).

Montalban alleges that Nurse Burgerhoff, Paramedic Kabonisk, and Doctor Walter Dobushak failed to provide him any medical treatment for his injuries while at USP-Canaan. Nurse Burgerhoff saw him the day of the incident. The following day Paramedic Kabonick peered through Plaintiff's SHU cell window at him but failed to provide him any medical assistance. (Id., ECF 27). Approximately two weeks after the assault, in January 2013, Doctor Dobushak saw Montalban and ordered x-ray images of his face, jaw and chest. (Id., ECF 25). However, Dobushak did not prescribe Montalban any medication for pain or provide him medical attention. (Id., ECF 26). It was not until September 2015, when Plaintiff saw a maxillofacial surgeon in Ocala, Florida, did he learn that he suffered from a fractured orbit during the December 2012 encounter. (Id.)

In June 2014, Montalban faced criminal charges stemming from the December 28, 2012 event in federal court. See USA v. Montalban, 3:13-cr-0001-MEM (M.D. Pa.).[3] During his criminal trial, Montalban was housed at the Lackawanna County Prison. Upon

---

[3] On June 19, 2014, Montalban was found guilty of forcibly assaulting and resisting a correctional officer and inflicting bodily harm, and the possession of a prohibited object. (Doc. 46-1, ECF 21).

conclusion of his trial, Federal Marshalls transported Montalban, and his legal property, to USP Canaan. Upon arriving at USP Canaan, CO Shultz allegedly lost or destroyed Montalban's legal materials in retaliation for his assault of Wisniewski. (Id., ECF 29; see also Doc. 33, ECF 2).

## IV. Statement of Undisputed Material Facts[4]

### A. The BOP's Administrative Remedy Program

The Federal Bureau of Prisons ("BOP") has established a three-tiered Administrative Remedy Program for inmates to resolve concerns related to their confinement. (Doc. 46, Defs.' Statement of Material Facts ("DSMF"), ¶ 1; see 28 C.F.R. § 542.10 et seq.). As a first step, the prisoner ordinarily must seek to resolve the issue informally with prison staff using a BP-8 form. (DSMF ¶ 2, citing 28 C.F.R. § 542.13(a)). If the informal complaint does not resolve the dispute, the prisoner may file a formal administrative remedy request at the institution of confinement using a BP-9 form. The inmate must submit the BP-9 form within twenty calendar days following the date on which the basis of the grievance occurred, except where the prisoner demonstrates a valid reason

---

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Fed. R. Civ. P. 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Pa. M.D. Local Rule 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue of trial. See Id. Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts. (Doc. 46). Montalban filed a brief in opposition to Defendants' motion as well as several supplementary opposition briefs; however, he did not file a response to Defendants' statement of material facts. See Docs. 50, 55, 56, and 63. Accordingly, the Court deems the facts set forth by Defendants to be undisputed. See Pa. M.D. Local Rule 56.1.

for delay.  (DSMF ¶ 3, citing 28 C.F.R. § 542.14).  The Warden has twenty days to respond to the inmate's written administrative remedy request.  (DSMF ¶ 4, citing 28 C.F.R. § 542.18).  If the Warden denies the BP-9 request, the inmate may file an appeal with the Regional Director using a BP-10 form.  The inmate must submit the BP-10 within twenty calendar days of the date the Warden responded to the BP-9, with the exception again where there are valid reasons for delay.  (DSMF ¶ 5, citing 28 C.F.R. § 542.15(a)).  As a last step, where the prisoner is not satisfied with the Regional Director's response, he or she may submit an appeal to the BOP Office of General Counsel located in the Central Office, using a BP-11 form.  The inmate must submit the BP-11 within thirty calendar days of the date the Regional Director's response to the BP-10, with the same exception for valid reasons for delay.  (DSMF ¶¶ 6 - 7, citing 28 C.F.R. §§ 542.15(a) and 542.18).  An appeal to the Central Office constitutes the final level of administrative review.  (DSMF ¶ 6, citing 28 C.F.R. § 542.15(a)).  The BOP does not consider an inmate to have exhausted his administrative remedies until he has pursued his grievances through all levels and Central Office decides it on its merits.[5]  See 28 C.F.R. §§ 542.10 – 542.19.

---

[5] One recognized exception to the requirement that the inmate commence his administrative remedy efforts at the institutional level is "[i]f an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the request became known at the institution." 28 C.F.R. § 542.14(d).  An inmate may file his or her "sensitive" administrative remedy directly to the appropriate BOP Regional Office so long as the inmate justifies why the issue should be deemed sensitive.  Id.  If rejected by the Regional Director, the inmate may re-file the grievance at the institutional level (Warden).  Id.  If the inmate is not given the opportunity to correct the defect and resubmit the administrative remedy, he or she may appeal the rejection to the next level, in this case, the General Counsel.  See 28 C.R.F. § 542.17(c).  The inmate shall be informed of the decision of his appeal by "delivery of either a receipt or rejection notice."  Id.

The BOP's Administrative Remedy Program instructs that the absence of a response within the time allotted for reply, including any extensions, is a denial of the inmate's request at that level. <u>See</u> 28 C.F.R. § 542.18.

When an inmate demonstrates a valid reason for a delay in submitting an administrative request or appeal, the BOP can extend the time limits for his submission. <u>See</u> 28 C.F.R. § 542.15(a). Valid reasons for a delay in submitting a request or appeal may include an extended period in-transit during which the inmate was separated from the documents necessary to prepare his appeal or an indication by the inmate and verified by staff, that a response to the inmate's request for copies of dispositions of administrative remedies and appeals requested under 28 C.F.R. § 542.19 was delayed. <u>See</u> 28 C.F.R. §§ 542.14(b) and 542.15(a).

## B.    Excessive Use of Force Claim

On or about January 15, 2016, Montalban filed sensitive administrative remedy number 849260-R1 with the Regional Office alleging staff misconduct at USP Canaan. (DSMF ¶ 8, citing Doc. 46-1, Declaration of Michael Figgsganter ("Figgsganter Decl."), ¶ 5 and Administrative Remedy Generalized Retrieval ("ARGR"), ECF 17). On January 22, 2016, the sensitive administrative remedy was rejected because Montalban filed it in the wrong Regional Office as he was then housed at USP Coleman I and not USP Canaan. Staff instructed Plaintiff to resubmit his sensitive remedy request to the Regional Office where he was presently housed. (DSMF ¶¶ 9 – 10; ARGR, ECF 17).

On or about January 19, 2016, Montalban filed sensitive administrative remedy number 848748-R1 with the Regional Office concerning the December 28, 2012- assault

at USP Canaan.  (DSMF ¶ 11; ARGR,  ECF 18).  On or about January 19, 2016, the Regional Office rejected Plaintiff's administrative remedy finding it failed to raise a sensitive issue.  (DSMF ¶ 12, ARGR,  ECF 18).  On or about April 25, 2016, Montalban filed administrative remedy number 848748-A1 with the General Counsel.  (DSMF ¶ 13; ARGR,  ECF 19).  The General Counsel's Office rejected the administrative remedy on May 10, 2016, because the issue raised was not sensitive and was filed at the wrong level or office.  (DSMF ¶ 14; ARGR,  ECF 19).

### C.    Deliberate Indifference Claim

On or about January 15, 2016, while housed at USP Coleman I, Montalban filed sensitive administrative remedy number 849264-R1 requesting medical treatment.  (DSMF ¶ 16; ARGR,  ECF 17).  On January 26, 2016, the Northeast Regional Office rejected it for several reasons, including that it was not sensitive and should first be filed at the institutional level and appealed to the Southeast Regional Office where he was designated. (DSMF ¶¶ 17 – 18; ARGR,  ECF 17; Doc. 55, ECF 33).  Montalban did not file any other administrative remedy request relating to medical care.  (DSMF ¶ 19; ARGR,  ECF 11 – 19).

### D.    Legal Property Claim

On or about October 26, 2015, Montalban filed a BP-9, administrative remedy number 840409-F1, with the institution alleging that his legal documents were lost and complaining of a left shoulder injury.  (DSMF ¶ 20; ARGR,  ECF 16).  Because the administrative remedy raised multiple issues, and failed to provide necessary specific

information, it was rejected on October 28, 2015.  Montalban was instructed to resubmit an appropriate request.  (DSMF ¶ 21; Doc. 55, ECF 48).

On or about November 5, 2015, Montalban filed a BP-9, administrative remedy request number 840409-F2, alleging that BOP staff lost his legal documents in July 2014. (DSMF ¶ 22; ARGR,  ECF 16).  The same day the request was rejected as untimely filed. (DSMF ¶ 23).  Montalban did not file his administrative remedy within twenty days of the July 2014 incident.  (Id.; ARGR,  ECF 16).

Montalban filed a sensitive administrative remedy request, number 848746-R1 on January 19, 2016, again while housed at USP Coleman I, alleging the denial of property. (DSMF ¶ 25; ARGR,  ECF 18).  On or about January 19, 2016, it was rejected by the Regional Office because it did not raise a sensitive issue.  (DSMF ¶ 26; ARGR,  ECF 18). Montalban filed administrative remedy number 848746-A1 with the General Counsel's office on April 25, 2016.  (DSMF ¶ 26; ARGR,  ECF 19).  The General Counsel's office rejected the administrative remedy on May 10, 2016 because it was filed at the wrong level or office.  (DSMF ¶ 27; ARGR,  ECF 19).

Montalban did not file any other administrative remedy relating to the 2014 loss of his legal property.  (DSMF ¶ 28; ARGR,  ECF 11 – 19).

### E.    First Amendment Retaliation Claim[6]

Since December 28, 2012, Montalban claims he did not utilize the administrative remedy process after staff warned him to stop filing administrative remedies.  (DSMF ¶ 29; ARGR,  ECF 11 – 19).

## IV.    Discussion

Defendants seek dismissal of the Amended Complaint, or the entry of summary judgment, on the following grounds:  (1) Montalban's official capacity claims are barred by the doctrine of sovereign immunity; (2) Montalban fails to allege the personal involvement of Defendants Cook, Gintz, Johanson, Mazza, Tuttle and Kabonick in the underlying claims; (3) the claims asserted in the Amended Complaint are barred by the statute of limitations; and (4) Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit.  (Doc. 45, Defs.' Mot. Dismiss, or in the alternative, Mot. Summ. J. Br).

As the Defendants' statute of limitations argument is dispositive, the Court will not address the alternative arguments raised by Defendants.

### A.    Statute of Limitations

"A Bivens claim, like a claim pursuant to 42 U.S.C. § 1983, is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations

---

[6] In his original Complaint, Montalban asserts that since the December 2012 incident "he has been threatened to stop all actions against (FBOP) staff in the form of Administrative Remedies Request for [his] legal materials that have been lost or damaged or stolen".  (Doc. 1, ECF 11). However, Plaintiff did not reassert this claim in his Amended Complaint.  <u>See</u> Doc. 24, Am. Compl.

for personal-injury claims." Wilson v. United States Gov't, 735 F. App'x 50, n. 1 (3d Cir. 2018) (internal quotations and citations omitted). In Pennsylvania, the statute of limitations for a personal injury action is two years, subject to any state law tolling provisions that are not inconsistent with federal law. See 42 PA. CONS. STAT. § 5524; Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); Lake v. Arnold, 232 F.3d 360, 368 - 69 (3d Cir. 2000). However, it is federal law that determines the date when a cause of action accrues. Under federal law, a civil rights cause of action accrues and the statute of limitations begins to run "'when the plaintiff knew or should have known of the injury upon which [his] action is based.'" Kach, 589 F.3d at 634 (quoted cases omitted) (brackets added). A "cause of action accrues even though the full extent of the injury is not then known or predictable … Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." Wallace, 549 U.S. at 392, 127 S.Ct. at 1097 (internal quotation marks and citations omitted).

Section 1983's statute of limitations is subject to tolling. With respect to prisoner claims, the statute is tolled while the inmate plaintiff exhausts his administrative remedies. See Pearson v. Sec'y Dept. of Corr., 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.") The statute of limitations also may be equitably tolled when the plaintiff was prevented from filing his action in a timely manner due to

sufficiently inequitable circumstances.[7]  See Cunningham v. M&T Bank Corp., 814 F.3d 156, 160 (3d Cir. 2016) (citing Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2007)).  Finally, "[t]he 'discovery rule' tolls the limitations period where the injured party is unable to know that he is injured and to know what caused the injury, despite the exercise of reasonable diligence."  Brown v. Buck, 614 F. App'x 590, 593 (3d Cir. 2015) (nonprecedential).

Here it is undisputed that Montalban was aware of the basis of his excessive force claim on the day it occurred, December 28, 2012.  Montalban also knew of the existence and operative cause of his medical deliberative indifference claim the first day he did not receive care for his alleged injuries, the day of the incident.  As such, Plaintiff's excessive use of force and deliberate indifference medical claims accrued on December 28, 2012.  Therefore, Montalban had until December 29, 2014, to file a timely civil rights action.[8]

Montalban filed his Complaint in this action on January 27, 2017.  (Doc. 1).  Thus, his present action asserting these claims is time barred absent a basis for tolling of the limitations period.[9]

---

[7] "[T]o benefit from the equitable tolling doctrine, plaintiffs have the burden of proving three necessary elements:  (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts."  Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir. 2006).

[8] As December 28, 2014 fell on a Sunday, pursuant to Fed. R. Civ. P. 6(a), Montalban had until the following business day, or December 29, 2014, to file a Complaint raising these claims.

[9] To the extent Montalban argues his Florida federal action, filed June 20, 2016, which initially included the USP-Canaan Defendants, somehow tolls the limitations period, he is mistaken.  See Doc. 1, ECF 31.  Plaintiff filed his Florida action after the expiration of the statute

(continued on next page)

With respect to Montalban's July 2014 legal property claim, it accrued on the day Federal Marshalls transported him to USP Canaan at the end of his federal criminal trial, the day he learned of his lost legal property. The documents submitted by Plaintiff suggest this occurred between July 7 and 14, 2014. See Doc. 51-1, ECF 19. Thus, Montalban had until July 14, 2016, to initiate suit against Defendant Schultz for the loss of his legal property. Again, absent any basis for tolling the applicable two-year statute of limitations, Montalban's legal property claim is time barred.

**B.      Exhaustion of Administrative Remedies**

Because the statute of limitations is tolled while an inmate plaintiff exhausts his administrative remedies, Pearson, 775 F.3d at 603, the Court must determine whether Montalban properly exhausted each of his claims, and if so, to what extent he is entitled to tolling of the limitations period.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their available administrative remedies before filing suit in court. 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust … administrative remedies … before bringing

---

of limitations of his excessive use of force and deliberate indifference claims. As for Plaintiff's assertion that he was unable to file a timely action because of physical or mental incapacitation following the December 28, 2012-assault, he fails to support this claim with any evidence of incapacitation. (Doc. 50, ECF 10). Moreover, he fails to demonstrate his alleged incapacitation for the entire limitations period, from December 28, 2012 until December 29, 2014. To the contrary, documents Montalban provides in connection with his Complaint demonstrate his physical and mental condition were evaluated by USP Cannan medical staff immediately following the incident and prior to his transfer to the Lackawanna County Prison. Moreover, Montalban was found physically and mentally fit to stand trial for assault related to his December 2012 attack of Wisniewski. See Doc. 1 and Doc. 50, ECF 10. Montalban provides no medical evidence to support his assertion that he suffered from daily seizures that prevented his ability to file a timely action.

suit to challenge prison conditions." Ross v. Blake, _____ U.S. _____, _____, 136 S.Ct. 1850, 1854 - 555, 195 L.Ed.2d 117 (2016) (quotation omitted); see also Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (same).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). The exhaustion requirement applies equally to inmate civil-rights claims brought under 42 U.S.C. § 1983 or Bivens. Id. at 524, 122 S.Ct. at 988.

A prisoner need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); Ross, _____ U.S. at _____, 136 S.Ct. at 1855. An administrative remedy is "'available' [if it] is 'capable of use for the accomplishment of a purpose' ". Id. at _____, 136 S.Ct. at 1858 - 59 (quoting Booth, 532 U.S. at 737, 121 S.Ct. at 1823). The Supreme Court in Ross outlined three circumstances "an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief". Rinaldi v. United States, 904 F.3d 257, 266 - 67 (3d Cir. 2018).

> (1) when 'it operates as a simple dead end --- with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

Id. (quoting Ross, _____ U.S. at _____, 136 S.Ct. at 1859 - 60). The Third Circuit Court of Appeals has found an inmate's administrative remedy "unavailable" where prison

officials thwarted an inmate's exhaustion efforts by providing misleading filing instructions, see Brown v. Croak, 312 F.3d 109 (3d Cir. 2002), and when they "failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." Robinson v. Supt. Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (State prison's administrative remedy process which did not contemplate an appeal from a non-decision thwarted the inmate's advancement of his claim through the appeal process). Additionally, where prison officials deter an inmate from pursuing an administrative remedy by making "serious threats of substantial retaliation … and bodily harm," the administrative remedy process is not "available."[10] Rinaldi, 904 F.3d at 267.

The PLRA also mandates "proper exhaustion" of all the agency's deadlines and other procedural rules pertaining to its administrative remedy process. Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" as they are "defined … by the prison grievance process itself." Jones v. Bock, 549

---

[10] A prison official's serious threats of retaliation will make administrative remedies "unavailable" when "the threat actually did deter the plaintiff from lodging a grievance or pursuing a particular part of the process" and "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Rinaldi, 904 F.3d at 268 (quoting Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)).

U.S. 199, 218, 127 S.Ct. 910, 922 - 23, 166 L.Ed.2d 798 (2007) (quoting Ngo, 548 U.S. at 88, 126 S.Ct. at 2384). "[I]t is the prison's [administrative remedy] requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218, 127 S.Ct. at 923. Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.3d at 227 - 32; see also Williams, 482 F.3d at 639 (inmate "procedurally defaulted" claim when he failed to comply with the requirements of the prison's grievance procedures).

Finally, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." Small v. Camden Cty., 728 F.3d 265, 269 (3d Cir. 2013).

The undisputed record before the Court confirms that Montalban did not file an administrative remedy concerning his excessive use of force or deliberate indifference claims prior to January 2016, more than a year after the statute of limitations expired. Thus, they do not provide any tolling benefit to Montalban. To the extent Montalban claims following the December 28, 2012-event he did not file any administrative remedies due to fear of staff retaliation, Montalban's unsupported assertions, nor the record, support such a finding. Following the incident, Montalban was transferred to the Lackawanna County Prison where he awaited trial on charges related to the December 2012 event. Later, in July 2014, several months prior to the expiration of the limitations period, Plaintiff was transferred to USP Coleman I. Montalban failed to provide any facts demonstrating how Defendants prevented him from filing an administrative remedy, or a sensitive administrative remedy to the Regional Office, prior to December 29, 2014. Moreover,

Montalban's claim that he feared filing administrative remedies following the December 2012 incident is undermined by his 2015 filing of multiple administrative remedies concerning his legal property, both at the institutional and Regional Director level.[11] Accordingly, the Court finds not equitable or other basis for tolling the limitations period for Montalban's excessive use of force or deliberate indifference claims. As such, both claims are time barred.

Next the Court addressed Montalban's administrative remedies concerning his legal property claim. These administrative remedies were filed within the applicable statute of limitations. Montalban's initial grievance, filed October 26, 2015, concerning his legal property was rejected three days later because it impermissibly raised multiple issues. (DSMF ¶ 21). Montalban's second administrative remedy related to the loss of his legal property, filed November 5, 2015, was rejected the same date as untimely filed. (DSMF ¶ 23 and ARGR, ECF 16). Even if the Court were to find these grievances timely filed, at most, they would toll the limitations period by three days.

Montalban's third administrative remedy, filed in January 19, 2016, was rejected the same day by the Regional Director because it failed to raise a sensitive issue. Montalban filed an appeal to the General Counsel on April 25, 2016. Fifteen days later,

---

[11] Montalban never filed an administrative remedy concerning his retaliation claim. Retaliation is a separate claim and prisoners must raise a specific claim of retaliation in their prison grievance in order to exhaust administrative remedies. See Boyd v. United States, 396 F. App'x 793, 796 (3d Cir. 2010) (nonprecedential) ("[T]o pursue a claim in federal court based on retaliation, [a prisoner] must first have exhausted administrative remedies for that claim."); see also Hoffenberg v. Provost, 154 F. App'x 307, 311 (3d Cir. 2005) (nonprecedential) (retaliation claim must be presented and exhausted as separate claim from underlying assault claim). Therefore, Montalban's retaliation claim is dismissed due to his failure to properly exhaust his administrative remedies prior to the initiation of this action.

on May 10, 2016, the General Counsel rejected the appeal because it was filed at the wrong level or office.  Assuming, only for the purposes of this memorandum, that Montalban's appeal to the General Counsel was appropriate and timely, only 115 days transpired between January 19 – May 10, 2016.  As previously noted, the limitations period for bringing Montalban's legal property claim, absent tolling, expired on July 14, 2016. Extending this period by the 115 days Montalban's third administrative remedy was pending only extends the limitations period until November 7, 2016.  Montalban did not file his Complaint until January 27, 2017.  Accordingly, Montalban's loss of legal property claim is untimely filed.  Defendants are entitled to summary judgment.

 An appropriate order follows.

           **BY THE COURT:**

**Dated:  January 15, 2019**     s/James M. Munley
             **JUDGE JAMES M. MUNLEY**
             **United States District Court**